[No. B142639. Second Dist., Div. Five. Apr. 3, 2001.]

ARTHUR S. GIFFORD, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

James K. Hahn, City Attorney, Cecil W. Marr, Assistant City Attorney, and James Axtell, Deputy City Attorney, for Defendant and Appellant.

Lawrence P. House for Plaintiff and Respondent.

**OPINION**

**ARMSTRONG, J.**—In 1998 the City of Los Angeles, through the Los Angeles Police Department (Police Department), refused respondent Arthur S. Gifford's application for a concealed firearm license. (Pen. Code, § 12050.) Gifford filed a petition for writ of mandate (Code Civ. Proc., § 1085), alleging that the Police Department was obligated to give him the license pursuant to a stipulated judgment in earlier litigation, *Lake v. City of Los Angeles* (Super. Ct. L.A. County, 1996, No. PC008329). In response, the Police Department argued that the *Lake* judgment did not relieve Gifford of the statutory obligation to show good cause for a license, and that he had not done so. The trial court agreed with Gifford and entered a judgment granting the petition and commanding the Police Department to issue a license to Gifford. We agree with the Police Department and reverse.

### The Lake Litigation

Gifford was one of several named plaintiffs in the *Lake* litigation. The City of Los Angeles and its agency, the Los Angeles Police Department, were among the defendants. The lawsuit challenged the Police Department's procedures, rules and practices for issuing licenses to carry concealed firearms pursuant to Penal Code[1] section 12050. That statute provides that "The sheriff of a county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of the conditions specified in subparagraph (D) and has completed a course of training as described in subparagraph (E), may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person." (§ 12050, subd. (a)(1)(A).)

The *Lake* litigation was resolved by stipulated judgment, filed on March 14, 1995. In the judgment, the Police Department admitted that certain of its rules, policies and procedures were not in compliance with section 12050, represented that those rules, policies and procedures had been altered, and stated that under the new policy "good cause exists if there is convincing evidence of a clear and present danger to life or of great bodily [harm] to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm." The Police Department stated that it "recognizes that [section 12050] requires the issuance of licenses to persons of good character who have good cause to carry a concealed firearm for the defense of themselves or others or in pursuing their livelihood."

---

[1]All further statutory references are to that code unless otherwise indicated.

The judgment also established a citizens advisory review panel to review contested applications and criteria for licensure, and, under the heading "Presumption," states that "[a]bsent good cause for denial, persons having good cause as defined . . . shall be issued licenses for the maximum time period allowed by section 12050, and their licenses shall be renewed so long as they continue to have good cause."

As to the advisory panel, the judgment requires the Police Department to notify applicants of the right to request a review, to promptly submit its file to the panel if a review is requested, and to "promptly reconsider the matter and take any further action it deems merited" if the panel recommends that the Police Department change its decision.

Finally, the stipulated judgment included a section dealing with the *Lake* plaintiffs. It provided that "[t]he allegations of the complaint showed good cause as to all of the plaintiffs who sought to be issued licenses," and that "These named plaintiffs will receive license[s], and prior to expiration upon timely reapplication their license will be renewed for a one year term, but only so long as they continue to have good cause, good character, not to be barred by law from the ownership of concealable firearms, and to meet each of the other requirements of licensure under section 12050 . . . ."

### Relevant Facts and Procedures[2]

Licenses under section 12050 are issued for a one-year period. Gifford was issued such a license pursuant to the stipulated judgment.[3] He applied for and received licenses in 1996 and 1997. In 1998, Gifford again submitted an application for a license. The application required him to "Set forth a statement of facts from which the Chief of Police could establish that your needs are within the criteria used for the issuance of a concealed weapons permit, and why in your opinion there are no other means whereby your personal safety can be assured." Gifford wrote "All conditions under which this CCW [California concealed weapon] was originally issued remain the same."

---

[2]The exhibits to Gifford's petition are the *Lake* stipulated judgment and stipulated judgments in two similar cases. With his reply brief in the trial court, Gifford submitted his declaration and the transcript of a hearing on a motion to enforce the judgment in one of those cases, *Khim v. City of Los Angeles* (Super. Ct. L.A. County, 1996, No. BC106210), as well as the ruling granting the motion and ordering the Police Department to issue specified permits. Most of the facts recited herein are found in exhibits to the Police Department's opposition to the petition.

[3]At oral argument, counsel for the city represented that one of the things the city relied on in granting earlier licenses to Gifford was a threat made against him in 1991, in New York.

The Police Department informed Gifford that he needed documentation newer than that supplied in 1993—apparently, his original, pre-*Lake*, application—to support his need. By letter, Gifford informed the Police Department that he would not supply additional documentation, asserting that under the *Lake* judgment his statement that his circumstances were unchanged was sufficient unless the city could show that the statement was untrue. The Police Department denied the license request, citing Gifford's failure to provide sufficient documentation and the lack of convincing evidence of a clear and present danger to life or great bodily injury to Gifford or a member of his immediate family.

Gifford requested a hearing from the advisory review panel. In January, that body recommended that Gifford's permit be reissued, giving as its reason "Good cause still exists; receives personal threats. No negative incidents with permit." The Police Department subsequently informed Gifford that it had conducted another review and again decided to deny the request for a license, again noting the lack of evidence of danger to Gifford or a member of his family.

Gifford's petition, signed by him under penalty of perjury, also states that he is an investigative journalist, that as such he is required to travel to dangerous parts of the city at dangerous hours, and that his investigations into the federal government's actions against the Branch Davidian church had resulted in numerous threats to his life. These facts formed no part of his license application.

*Discussion*

■ Section 12050 gives "extremely broad discretion" to the sheriff concerning the issuance of concealed weapons licenses (*Nichols v. County of Santa Clara* (1990) 223 Cal.App.3d 1236, 1241 [273 Cal.Rptr. 84]) and "explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements." (*Erdelyi v. O'Brien* (9th Cir. 1982) 680 F.2d 61, 63.) This discretion must be exercised in each individual case. "It is the duty of the sheriff to make such an investigation and determination, on an individual basis, on every application under section 12050." (*Salute v. Pitchess* (1976) 61 Cal.App.3d 557, 560-561 [132 Cal.Rptr. 345].)

■ In ordinary mandamus proceedings such as this one, courts may exercise a very limited review of a public agency's action, and may merely determine whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support. (*Shapell Industries, Inc. v. Governing Board*

(1991) 1 Cal.App.4th 218, 229, 231 [1 Cal.Rptr.2d 818].) We cannot say that the denial of Gifford's license fell beneath that standard. Gifford's application contained a single statement about good cause, that "All conditions under which this CCW was originally issued remain the same." The statement is vague and general, so that the request for further information which would enable the Police Department to evaluate the application can hardly been deemed arbitrary or capricious. Nor can the denial of the license when further information was refused.

However, Gifford argues—and this is his central point—that in the *Lake* judgment, the Police Department stipulated that he had good cause for a license and that his license would be renewed every year unless the Police Department could show that he no longer had good cause. We exercise an independent review of the terms of a written instrument (*Plaza Freeway Ltd. Partnership v. First Mountain Bank* (2000) 81 Cal.App.4th 616, 621 [96 Cal.Rptr.2d 865]), and must disagree with the trial court that the *Lake* judgment so provides.

Under section 12050, a license will be granted only upon proof of good cause. The criteria adopted by the Police Department in the *Lake* judgment are the same: a license will be issued where the applicant has good cause and there are no "strong countervailing factors." The definition of good cause adopted in the "Criteria for Licensing" section of the *Lake* judgment specifies that the *applicant* must establish the existence of good cause. The section of the *Lake* judgment that concerns the named plaintiffs does not change that requirement. Instead, in that section, the Police Department stipulated that in the *Lake* complaint the plaintiffs had made the necessary showing of good cause, and that a license would be issued on that basis. The judgment does require the Police Department to renew the plaintiffs' licenses from year to year, but only on application, and only "so long as they continue to have good cause, good character, not to be barred by law from the ownership of concealed firearms, and to meet each of the other requirements of licensure under section 12050 . . . ." Nothing in the judgment requires the Police Department to renew the licenses of the *Lake* plaintiffs without a current showing of good cause. Nothing in the judgment shifts the application burden to the Police Department, or provides that the Police Department must renew the license unless it can show that the applicant does not have good cause.

Gifford's contrary interpretation would hardly be logical, since it would require the Police Department to conduct yearly investigations of each of the *Lake* plaintiffs, so that the current status of each plaintiff's need for a license could be determined—information which would be readily available to the plaintiffs themselves.

Our conclusion here is bolstered by the fact that Gifford suffers no legally cognizable harm through our decision. If he has good cause for a license, he may demonstrate it, and the Police Department must issue one to him pursuant to the *Lake* judgment. If he does not have good cause he is not entitled to the license, and may not complain if he does not receive one.

### *Disposition*

The judgment is reversed. Appellant to recover its costs of appeal.

Turner, P. J., and Willhite, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.