[No. C035386. Third Dist. Oct. 1, 2002.]

ROAD SPRINKLER FITTERS LOCAL UNION NO. 669, Plaintiff and Respondent, v.
G & G FIRE SPRINKLERS, INC., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*See footnote 2, *post*, at page 770.

## COUNSEL

Horvitz & Levy, David M. Axelrad, Sandra J. Smith, Stephanie Rae Williams, Jon B. Eisenberg; and Robert G. Klein for Defendant and Appellant.

Roger Frommer & Associates and Roger Frommer for Plaintiff and Respondent.

Robert N. Villalovos and Michelle Yu for Division of Labor Standards Enforcement as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—This case is the result of a dispute arising from the construction of a new wing of the San Joaquin General Hospital, in which the subcontractor, G & G Fire Sprinklers, Inc. (G & G), failed to pay its workers the prevailing wage rate for their labor classification.

Road Sprinkler Fitters Local Union No. 669 (the Union), acting on the assignment of the statutory rights of four workers, sued G & G to recover their unpaid, prevailing wages under Labor Code section 1774[1] and for waiting time penalty wages under section 203.

G & G appeals from the judgment in favor of the Union, raising several contentions. It claims this matter is preempted by the National Labor Relations Act and that the National Labor Relations Board has exclusive jurisdiction over this case, the Union has no standing to sue because its standing is limited to recovery of the workers' statutory rights and the workers have no private statutory right to recover unpaid prevailing wages, G & G's reasonable good faith choice of job classification defeats the Union's claim, the trial court's erroneous rulings on the burden of proof and the admission of evidence require a new trial, and G & G is not liable for waiting time penalty wages.

---

[1]All further section references are to the Labor Code unless otherwise specified.

In the published portion of the opinion we conclude the Union, as assignee of the workers' statutory rights, has standing to assert G & G's statutory duty to pay prevailing wages under section 1774, because a prevailing wage is a minimum wage, and therefore the workers may assert their express rights to recover their unpaid prevailing wages under the minimum wage provisions of section 1194.[2]

We find no error and affirm the judgment and award of damages.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

On September 28, 1993, the County of San Joaquin awarded Perini Building Company, Inc. (Perini), a public works construction contract to build a new wing of the San Joaquin County General Hospital. On November 23, 1993, Perini selected G & G as the subcontractor to install the fire suppression sprinkler system for the hospital. Pursuant to a written subcontract, G & G agreed to perform this work for $398,000.

A fire suppression sprinkler system may be installed only by workers classified as fire sprinkler fitters, a skilled classification of the plumbers craft responsible for installing and maintaining several types of fire suppression systems.

In its call for bids and in the public works contract, San Joaquin County published the prevailing wages for the work classifications necessary to execute the contract. Included in the publication was the basic prevailing hourly wage rate for fire sprinkler fitters. Including benefits, the rate was $33.73 per hour in 1994 when the work was performed.

G & G hired a number of workers to install the fire suppression system it had agreed to provide under its subcontract with Perini. Four of these workers were Thomas Browning, Dennis Marlowe, Kenneth Ahoff, and Stephen Ledford. They are fire sprinkler fitters by trade with years of experience in the trade and belong to the Union. G & G hired Browning as the foreman and paid him the basic rate for the classification of fire sprinkler fitter, but failed to provide him with the required benefits. G & G paid Marlowe, Ahoff, and Ledford as pipe tradesmen, a classification that carries a lower per diem prevailing wage rate than a fire sprinkler fitter. G & G also failed to provide these men with benefits.

---

[2]Under California Rules of Court, rules 976(b) and 976.1, the Reporter of Decisions is directed to publish the opinion except for parts I, and III through V of the Discussion.

[3]The statement of facts is taken primarily from the trial court's statement of intended decision.

Browning, Marlowe, Ahoff and Ledford filed complaints with the Division of Labor Standards Enforcement (DLSE) protesting their rate of pay and lack of benefits, triggering an investigation by DLSE. After an initial review of the matter, a DLSE investigator advised G & G it was using the wrong classification to pay its men and advised it to cease that practice. G & G did not heed the advice. DLSE subsequently filed a notice to withhold payment against G & G in the amount of $93,867.08 for wages and penalties. DLSE determined the total amount of underpaid wages and penalties owed by G & G was $219,929.25.

G & G called only one witness, Mr. Itai Ben-Artzi, to testify concerning its claim it paid Browning, Marlowe, Ahoff, and Ledford their required benefits and that it had reasonably and in good faith relied on information provided by government officials in making its determination that Marlowe, Ahoff, and Ledford should be classified as pipe tradesmen and paid the prevailing wage for that classification.

Browning, Marlowe, Ahoff, and Ledford signed a document assigning the Union their "statutory" rights to collect underpaid wages and benefits.

The DLSE filed a complaint against Perini and its sureties to recover the underpaid wages and benefits for 17 workers, and penalties. The Union, as assignee of Browning, Marlowe, Ahoff, and Ledford, filed a complaint against the County of San Joaquin, Perini, G & G, and the sureties for their underpaid wages and waiting time penalty wages. Pursuant to a stipulation and order, the Union agreed to abate its action against the County, Perini, and the sureties, and these defendants were dismissed from the action without prejudice. The two matters were consolidated and tried before the court.

The trial court found in favor of DLSE[4] and the Union. The court awarded the Union $230,630.60 against G & G for deficiency wages, unpaid benefits, waiting time penalty wages, interest, attorneys' fees, and costs.[5] The amount awarded for deficiency wages, $93,633.41, was included in the total awards to both the Union and DLSE and was made joint and several. The award to the Union for waiting time wages, interest, attorneys' fees, and costs was made several.

G & G filed a timely notice of appeal from the judgment in favor of the Union.

---

[4]DLSE was awarded a total of $343,839.26 against Perini and $215,820 against the sureties.

[5]The total award of $230,630.60 is calculated as the sum of the following items of damages: deficiency wages: $93,633.41; interest: $41,257.19; waiting time wages (§ 203): $32,380.00; interest: $40,860; and attorneys' fees: $22,500.

## DISCUSSION[6]

### I.*

*Preemption*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.

*Standing*

G & G contends the Union lacks standing to assert the workers' claims for unpaid prevailing wages and benefits. G & G claims the Union was assigned only the right to recover for the workers' statutory rights and the workers have no private, statutory rights to sue a subcontractor for unpaid prevailing wages and benefits.

The Union argues the employees transferred to the Union "any and all statutory rights," which include the power to collect the unpaid prevailing

---

[6]At oral argument, G & G raised the defense of res judicata for the first time, citing to footnote 12 in *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888 907-908 [123 Cal.Rptr.2d 432, 51 P.3d 297] (*Mycogen*), arguing that the final judgment in DLSE's case against Perini and its sureties bars recovery by the Union against G & G under principles of res judicata.

This claim has no merit. The doctrine of res judicata, or "claim preclusion," gives preclusive effect to former judgments on the merits and bars relitigation of the same cause of action in a subsequent suit between the same parties or parties in privity with them. (*Mycogen, supra,* 28 Cal.4th at pp. 896-897.) The doctrine promotes judicial economy by limiting multiple litigation. (*Id.,* at p. 897; 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 280, p. 820.) In *Mycogen,* the Supreme Court held that a final judgment in an action for declaratory relief and specific performance is a bar to a separate subsequent action for damages on the same underlying claim.

The defense of res judicata must be pleaded and proven. Failure to properly raise it in the trial court waives it. (7 Witkin, Cal. Procedure, *supra,* Judgment, §§ 281, 291, pp. 821, 836-837.) G & G waived this claim by failing to raise it in the trial court. Moreover, among the many hurdles that G & G would have to overcome to successfully assert this defense would be to establish privity of interest between the DLSE and the Union. " '[P]rivity involves a person so identified in interest with another that he represents the same legal right.' " (*Zaragosa v. Craven* (1949) 33 Cal.2d 315, 318 [202 P.2d 73, 6 A.L.R.2d 461]; 7 Witkin, *supra,* Judgment, § 392, p. 961.) G & G must also establish identity of claim. (*Mycogen, supra,* 28 Cal.4th 888.) As we discuss, *post,* the legal claims and factual issues raised and litigated in the suit by DLSE against Perini and its sureties were significantly different from those claims and issues raised by the Union as the workers' assignee against G & G. (See fn. 14, *post.*)

*See footnote 2, *ante,* page 770.

wages under section 1774, as well as under a third party beneficiary theory. We agree with the Union although we differ in our analysis of the statutory basis for standing. We agree with G & G that the rights conveyed by the assignments are limited, for purposes of our discussion, to the workers' statutory rights, but conclude the workers have private statutory rights to recover unpaid prevailing wages under sections 1194 and 1774 and waiting time wages under section 203.

### A. *The Assignment*

The assignments state as follows: "The undersigned does hereby authorize the filing of Mechanics Liens or Stop Notices, on my behalf with respect to the job site at San Joaquin General Hospital, French Camp, whereon my Employer G & G FIRE SPRINKLER CO., INC. ('G & G') was engaged, and whereon the undersigned worked, for which work I failed to receive payment of state prevailing wages; and further transfers and assigns for purposes of collection, all of my rights and causes of action under the Mechanics Lien Law to Road Sprinkler Fitters Local Union, 669 ('Union'), and does further transfer and assign all interest in and to, any and all parties named therein (owners, awarding bodies, etc.) to said Union. *This Assignment includes any and all statutory and private bond rights.*" (Italics added, fn. omitted.)

The trial court found that while the assignment is "less than artfully drafted," it included the workers' statutory rights under section 1774 and any third party beneficiary theory based on the prevailing wage contract.

Because the assignment is a written instrument, in the absence of parol evidence we review the assignment independently, looking to the language of the assignment. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Gifford v. City of Los Angeles* (2001) 88 Cal.App.4th 801, 806 [106 Cal.Rptr.2d 164].) By its own terms, the assignment is limited to the filing of mechanics' liens and stop notices, and for purposes of collection, "all . . . causes of action under the Mechanics Lien Law," and "any and all *statutory* and private bond rights." (Italics added.) Because these rights are expressed in the conjunctive, we understand the causes of action under the "Mechanic's Lien Law" to be separate from and not a limitation on "all statutory and private bond

rights." ▉ ▉ ▄ ▄ For reasons we footnote, the workers have no mechanic's lien rights regarding the performance of public work.[11]

For these reasons, no doubt, the Union bases its standing to sue G & G on the assignment of "statutory" rights under section 1774 and on a third party beneficiary theory.[12] ▉ As discussed more fully in part II.B, the right to recover prevailing wages under the statutory scheme is separate from the right to recover under the public works contract. ▉ ▄ At the risk of stating the obvious, the right to recover under the statute arises from the statutory scheme (§§ 1771, 1774, 1775; see *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 986-988 [4 Cal.Rptr.2d 837, 824 P.2d 643]), while the right to recover on a contract theory arises from the common law right to sue for breach of the express terms of the contract as a third party beneficiary of the public works contract. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971 [9 Cal.Rptr.2d 92, 831 P.2d 317] (*Aubry*); *Tippett v. Terich* (1995) 37 Cal.App.4th 1517, 1532-1534 [44 Cal.Rptr.2d 862], overruled on other grounds in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 171 [96 Cal.Rptr.2d 518, 999 P.2d 706]; *Department of Industrial Relations v. Fidelity Roof Co., supra,* 60 Cal.App.4th at pp. 425-426 [a worker has a private common law right of action to recover unpaid wages against a contractor as a third party beneficiary of the public works contract].)[13]

▉ The limited language of the assignments purports to transfer only the right to recover unpaid wages under a statute, not under the contract. No personal or contractual rights are included within the assignment.

The Union argues that because the cases were consolidated by defendants and the issues and facts are identical for the consolidated plaintiffs, "it

---

[11]▉ A mechanic's lien is a procedural device for obtaining payment of a debt owned by a property owner for the performance of labor or the furnishing of materials used in construction. (Civ. Code, §§ 3109-3154.) However, mechanics' liens are not applicable to the performance of a public work. (Civ. Code, § 3109; *Department of Industrial Relations v. Fidelity Roof Co.* (1997) 60 Cal.App.4th 411, 418 [70 Cal.Rptr.2d 465].) ▉ A payment bond is the practical substitute for a mechanic's lien in the public works context when a stop notice is inadequate because insufficient funds remain to be paid by the awarding body. (*Id.* at p. 423.) A payment bond is required by statute and affords an additional or cumulative remedy. (*Ibid.*) The assignment therefore assigns to the Union the right to sue the surety on the payment bond. Because the language regarding the mechanic's lien law is without legal effect, it adds nothing to the Union's argument.

[12]At oral argument, G & G agreed that "private" modifies "bond rights," to the effect that the assignment is of statutory rights and private bond rights.

[13]When seeking recovery for deficiency wages for breach of a public works contract, the plaintiff must plead a common law cause of action for breach of contract and must allege the public works contract, by its terms, requires the payment of prevailing wages. (*Aubry, supra,* 2 Cal.4th at p. 971.) It has not done so.

makes little difference under whose assignment the claimants are cloaked, for the Labor Commissioner may take wage claims without assignment." Aside from the inaccuracy of this claim,[14] we fail to see its relevancy in determining the scope of the assignment, which turns on its terms.

For these reasons, we conclude the assignment is limited to the workers' statutory rights to sue G & G for recovery of unpaid prevailing wages.

### B. *The Private Statutory Right to Recover Unpaid Prevailing Wages Against the Subcontractor*

G & G contends that sections 1774 and 1775 do not create a private right of action to recover unpaid prevailing wages from a subcontractor. It argues the statutory scheme gives DLSE the exclusive statutory right to sue a contractor for unpaid prevailing wages and penalties, that section 1775 details the procedures for suits to recover such wages and penalties, and the statutory scheme makes no mention of suits by individuals.

As discussed above in part II.A, Browning, Marlowe, Ahoff, and Ledford assigned the Union their statutory rights to recover unpaid wages. The assignee "stands in the shoes" of the assignor and his rights are no greater than those of the assignor. (Civ. Code, § 1459; Code Civ. Proc., § 368; Rest.2d Contracts, § 336; 4 Corbin on Contracts (1981) § 892 et seq.)

---

[14]The legal and factual issues in a suit by the assignee of a worker against the subcontractor are not identical to the legal and factual issues raised in a suit by the DLSE against a contractor. In a suit to recover deficiency wages by the Union as an assignee of an aggrieved worker who is a third party beneficiary of the public works contract, the Union has the burden of proof (Evid. Code, § 500 ["a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"]; *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1205 [52 Cal.Rptr.2d 518]), and must establish the factual elements of its standing as a third party beneficiary (*Tippett v. Terich, supra*, 37 Cal.App.4th at pp. 1531-1532), the breach of the terms of the contract (*ibid.*), and the assignment.

In a suit by the DLSE against a contractor under former section 1775, the only issue to be determined is the contractor's liability for the penalties and deficiency payments, and the contractor has the burden of proving that the penalties and amounts demanded in the action are not due. Additionally, the contractor's liability for penalties is subject to statutory defenses, including his willful failure to pay the correct rates of pay and his knowledge of his or her obligations under the statutory scheme. (Former § 1775; as amended by Stats. 1992, ch. 1342, § 9, pp. 6602-6603.)

Unlike the Union, the DLSE need not obtain an assignment from an aggrieved worker before bringing suit against the contractor on behalf of the worker for recovery of deficiency wages. (§ 96.7; *Department of Industrial Relations v. Fidelity Roof Co., supra,* 60 Cal.App.4th at pp. 426-427.) In sum, the burden of proof and the legal and factual issues in suits brought by DLSE against a contractor and by the assignee of a worker against a subcontractor are significantly different.

 We therefore determine whether the workers have a private statutory right to recover unpaid wages from G & G.

 The California Prevailing Wage Law is a comprehensive statutory scheme designed to enforce minimum wage standards on construction projects funded in whole or in part with public funds. (§§ 1720-1861; see *Lusardi Construction Co. v. Aubry, supra,* 1 Cal.4th at p. 985 (*Lusardi*); *Independent Roofing Contractors v. Department of Industrial Relations* (1994) 23 Cal.App.4th 345, 351 [28 Cal.Rptr.2d 550].)

Under the prevailing wage law, all workers employed on public works costing more than $1,000 must be paid not less than the general prevailing rate of per diem wages as determined by the Director of the Department of Industrial Relations for work of a similar character and not less than the general prevailing per diem wage for holiday and overtime work. (§§ 1770, 1771, 1772 & 1774; *Lusardi, supra,* 1 Cal.4th at p. 987; *O.G. Sansone Co. v. Department of Transp.* (1976) 55 Cal.App.3d 434, 441 [127 Cal.Rptr. 799].) Per diem wages include employer payments for health and welfare, pension, vacation, travel time, and subsistence pay as provided for in the applicable collective bargaining agreement. (§ 1773.1, and former § 1773.8, repealed by Stats. 1999, ch. 1224, § 5.) The duty to pay the prevailing wage to employees on a public works project extends to both the prime contractor and all subcontractors. (§ 1774.)

The central purpose of the prevailing wage law is to protect and benefit employees on public works projects. (*Lusardi, supra,* 1 Cal.4th at p. 985; *O.G. Sansone Co. v. Department of Transportation, supra,* 55 Cal.App.3d at p. 458.) It also includes several goals which serve "to protect employees from substandard wages that might be paid if contractors could recruit labor from distant cheap-labor areas; to permit union contractors to compete with nonunion contractors; to benefit the public through the superior efficiency of well-paid employees; and to compensate nonpublic employees with higher wages for the absence of job security and employment benefits enjoyed by public employees." (*Lusardi, supra,* 1 Cal.4th at p. 987.)

Former section 1775 authorizes the Division of Labor Standards Enforcement to maintain a civil action to recover deficiency wages and penalties from a contractor on a public works project who fails to pay the prevailing rate to his workers. (Former § 1775, as amended by Stats. 1992, ch. 1342, § 9, pp. 6602-6603.) However, the remedies specified in section 1775 are not exclusive. (*Tippett v. Terich, supra,* 37 Cal.App.4th at pp. 1531-1532.) The DLSE also may file suit on behalf of the workers against the awarding body

on a third party beneficiary theory (*Aubry, supra,* 2 Cal.4th at p. 971) and against a surety on the payment bond. (*Department of Industrial Relations v. Fidelity Roof Co., supra,* 60 Cal.App.4th at p. 425.)

Additionally, a worker on a public works project may maintain a private suit against the contractor to recover deficiency wages as a third party beneficiary of the public contract if the contract provides for the payment of prevailing wages. (*Tippett v. Terich, supra,* 37 Cal.App.4th at pp. 1531-1532; *Department of Industrial Relations v. Fidelity Roof Co., supra,* 60 Cal.App.4th at pp. 425-426; *Aubry, supra,* 2 Cal.4th at p. 971.)

With this background in mind, we turn to the question whether a worker has a private *statutory* cause of action against a contractor to recover the prevailing wage. While the question has not been decided, it has been discussed. (*Aubry, supra,* 2 Cal.4th at p. 969, fn. 5, *id.* at p. 972 (dis. opn. of Kennard, J.).)

In *Aubry,* a contractor (Lusardi) brought suit for injunctive and declaratory relief against the DLSE seeking a determination the prevailing wage law did not apply to a hospital facility constructed by the contractor for a third party who would sell it to the public hospital district on completion. After the trial court granted summary judgment for the contractor, the DLSE cross-complained against the public hospital district under tort claims provisions of Government Code section 815.6, seeking damages for violation of the prevailing wage law. The district's demurrer to that claim was sustained and the DLSE appealed.

The Supreme Court held that Government Code section 815.6 does not provide a cause of action against a public entity that fails to comply with its obligation under the prevailing wage law. The court reasoned that section 815.6 is part of the Tort Claims Act which does not protect the type of injury arising from the failure to pay prevailing wages, i.e., injuries that " 'would be actionable if inflicted by a private person.' " (*Aubry, supra,* 2 Cal.4th at p. 968, italics omitted.)

Justice Kennard, writing in dissent, was of the view the interest injured was one protected in an action between private persons. "The worker can proceed [under Labor Code section 1194] against the contractor in an action to which no public entity need be a party—an 'action between private persons.' " (*Aubry,* supra, 2 Cal.4th at pp. 972, 976 (dis. opn. of Kennard, J.).) Responding to the dissent, Justice Panelli writing for the majority, pointed out the court had not yet decided this issue and dismissed the dissent's view on the grounds that "even if such an action is available, it

does not bring the present action within the scope of the Tort Claims Act. Any action by a worker against a contractor for wages must necessarily be based on the worker's contractual relationship with the contractor . . . . Thus, a worker's action against an employer for unpaid statutorily required wages sounds in contract." (*Id.* at p. 969, fn. 5.)

This case tenders the issue not reached by the majority in *Aubry* and we therefore consider the applicability of the provisions of section 1194, which provides as follows: "(a) Notwithstanding any agreement to work for a lesser wage, *any employee* receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee *is entitled to recover in a civil action* the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." (Italics added.)

Section 1194 grants to an employee the statutory right to recover in a civil action for unpaid minimum wages and overtime compensation. (See *Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1492 [257 Cal.Rptr. 924] [overtime compensation].) In the context of overtime compensation, the court in *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1430 [95 Cal.Rptr.2d 57], explained, "[a]n employee's right to wages and overtime compensation clearly have different sources. Straight-time wages (above the minimum wage) are a matter of private contract between the employer and employee. Entitlement to overtime compensation, on the other hand, is mandated by statute and is based on an important public policy. . . . 'The duty to pay overtime wages is a duty imposed by the state; it is not a matter left to the private discretion of the employer. [Citations.] California courts have long recognized [that] wage and hours laws "concern not only the health and welfare of the workers themselves, but also the public health and general welfare." [Citation.]' " (Italics omitted.)

It is well established that California's prevailing wage law is a minimum wage law (*Metropolitan Water Dist. v. Whitsett* (1932) 215 Cal. 400, 417-418 [10 P.2d 751]; *O.G. Sansone Co. v. Department of Transportation, supra,* 55 Cal.App.3d at p. 448; see also *People v. Hwang* (1994) 25 Cal.App.4th 1168, 1181 [31 Cal.Rptr.2d 61]), which guarantees a minimum cash wage for employees hired to work on public works contracts. (*Department of Industrial Relations v. Nielsen Construction Co.* (1996) 51 Cal.App.4th 1016, 1026 [59 Cal.Rptr.2d 785].) Like overtime compensation (*Earley v. Superior Court, supra,* 79 Cal.App.4th at p. 1430), the prevailing wage law serves the important public policy goals of protecting employees on public works projects, competing union contractors and the public. (*Lusardi, supra,* 1

Cal.4th at pp. 985, 987.) The duty to pay prevailing wages is mandated by statute and is enforceable independent of an express contractual agreement. (§§ 1771, 1774-1775; *Lusardi, supra,* 1 Cal.4th at pp. 986-987.) Thus, while the obligation to pay prevailing wages arises from an employment relationship which gives rise to contractual obligations and claims (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 22-23 [157 Cal.Rptr. 706, 598 P.2d 866], the duty to pay the prevailing wage is statutory. (§§ 1771, 1774.)

For these reasons we conclude that, because the prevailing wage law is a minimum wage law mandated by statute and serves important public policy goals, section 1194 provides an employee with a private statutory right to recover unpaid prevailing wages from an employer who fails to pay that minimum wage.

C. *The Private Statutory Right to Recover Waiting Time Wages*

The Union also sought and was awarded waiting time wages under section 203.[15] It compels the prompt payment of earned wages (*Triad Data Services, Inc. v. Jackson* (1984) 153 Cal.App.3d Supp. 1, 9 [200 Cal.Rptr. 418]), and provides an employee who is discharged or quits with a statutory cause of action against his or her employer if the employer fails to pay earned wages immediately upon the employee's termination. (§ 203; *Division of Labor Law Enforcement v. El Camino Hosp. Dist.* (1970) 8 Cal.App.3d Supp. 30, 35 [87 Cal.Rptr. 476].)

Thus, under section 203, if G & G owed the workers wages at the time their employment terminated and failed to pay them, it is liable to the employee for penalties which the employee has a statutory cause of action to recover.

For these reasons we hold that workers on public works projects have a private statutory right to sue their employer for failure to pay the prevailing

---

[15]The version of section 203 governing the instant proceedings, provides as follows:

"If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days. No employee who secretes or absents himself to avoid payment to him, or who refuses to receive the payment when fully tendered to him, including any penalty then accrued under this section, shall be entitled to any benefit under this section for the time during which he so avoids payment.

"*Suit may be filed for such penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise.*" (Stats. 1975, ch. 43, § 1, pp. 75-76, italics added.)

wage (§§ 1194, 1771, 1774) and for waiting time wages. (§ 203.) Because workers have private statutory remedies against their employer, the assignment of their "statutory rights" was sufficient to give the Union standing to sue G & G for recovery of unpaid prevailing wages and waiting times wages.

III.-V.*

. . . . . . . . . . . . . . . . . . . . .

VI.

*Section 203 Waiting Time Wages*

G & G contends it is not liable for section 203 waiting time penalties because it paid all of the wages due, its failure to pay the prevailing wage for sprinkler fitters was not willful, and it acted in good faith after requesting guidance from the State. ▉▉▉▉ The Union contends section 203 penalty wages were properly imposed. We agree with the Union.

The trial court awarded the Union $32,380 in waiting time penalties under section 203. The purpose of section 203 is to "compel the prompt payment of earned wages . . . ." (*Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1, 7 [177 Cal.Rptr. 803] (*Barnhill*); *Mamika v. Barca* (1998) 68 Cal.App.4th 487, 492 [80 Cal.Rptr.2d 175].) Former section 203 mandates the payment of penalties under the following circumstances: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days." (§ 203, as amended by Stats. 1975, ch. 43, § 1, p. 75.)

Section 202 provides that when an employee who does not have a written contract for a definite period quits his employment, his wages become "due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

Wages are defined to include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of

*See footnote 2, *ante*, page 770.

calculation." (§ 200, subd. (a).) "Wages" include health benefits (*People v. Alves* (1957) 155 Cal.App.2d Supp. 870, 872 [320 P.2d 623]) and other fringe benefits. (*Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 44 [100 Cal.Rptr. 791]; *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 780 [183 Cal.Rptr. 846, 647 P.2d 122, 33 A.L.R.4th 254].)

Thus, section 203 requires the payment of an additional penalty if the employer willfully fails to comply with section 202. The term "willful" within the meaning of section 203, means the employer "intentionally failed or refused to perform an act which was required to be done." (*Barnhill, supra,* 125 Cal.App.3d at p. 7, italics omitted; *Ghory v. Al-Lahham, supra,* 209 Cal.App.3d 1487, 1492 [257 Cal.Rptr. 924].) It does not mean that the employer's refusal to pay wages must necessarily be based on a deliberate evil purpose to defraud workers of wages which the employer knows to be due. (*Barnhill, supra,* 125 Cal.App.3d at p. 7; *Davis v. Morris* (1940) 37 Cal.App.2d 269, 274 [99 P.2d 345].)

The evidence was clear. G & G's workers were sprinkler fitters entitled to the prevailing wage for that classification. Because G & G failed to promptly pay these workers their due upon their termination of employment, G & G also owed them penalty wages under section 203.

G & G argues that because it paid its workers more than the prevailing wage as pipe tradesmen, and paid full benefits in cash, it could not be held liable for failure to pay wages or waiting time penalties under section 203. G & G also argues that it paid Browning the full wage and benefits for a fire sprinkler fitter and that a contrary conclusion is not supported by substantial evidence.

In considering G & G's contention, the crucial determination is whether there is substantial evidence in support of the trial court's findings of fact. " '[T]he power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) It will not reweigh the evidence. (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465 [46 Cal.Rptr.2d 427, 904 P.2d 834].)

The first of G & G's claims is premised on the factual claim it did not owe the workers the prevailing wage for sprinkler fitters. It ignores the trial court's contrary findings of fact that G & G had erroneously classified its workers as pipe tradesmen, that they should have been classified as fire

sprinkler fitters and paid the prevailing wage for that classification. The second claim is also contrary to the trial court's finding that G & G failed to enroll Browning in any of its benefit plans.

 A reviewing court begins with the " 'presumption that the record contains evidence to sustain every finding of fact.' " (*Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881.) To overcome the trial court's factual findings, G & G must " 'demonstrate that there is *no* substantial evidence to support the challenged findings.' . . . A recitation of only defendants' evidence is not the 'demonstration' contemplated under the above rule. [Citation.] Accordingly, if . . . 'some particular issue of fact is not sustained, [defendants] are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error is deemed to be waived.' " (*Foreman Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881, italics added by *Foreman.*) G & G sets forth only its own evidence, ignoring the trial court's findings and the evidence in support of those findings. It has therefore waived its substantial evidence claim.

Second, G & G claims it did not act willfully in failing to pay the prevailing wage, arguing that "[m]ore than a simple mistake is required to impose the statutory penalties." G & G applies the wrong legal standard and again ignores the factual findings.

 An employer's good faith mistaken belief that wages are not owed may negate a finding of willfulness. In *Barnhill, supra,* 125 Cal.App.3d 1, the employee was owed wages upon her discharge but she owed the employer on a debt she incurred. The employer exercised its right of setoff against the employee's wages, bringing the amount due to the employee to zero. The court held the employer did not have a right of setoff and was therefore liable to the employee for wages due at the time of her discharge. Nevertheless, because the question of setoff was one of law and the law was not clear at the time of the employee's discharge, the employer's good faith belief he had a right of setoff negated a finding his nonpayment of wages was willful within the meaning of section 203. (*Barnhill,* at pp. 8-9.)

 By contrast, in the instant case, the trial court found that "G & G's error in classification is clear. Marlowe, Ahoff, and Ledford should have been classified as Fire Sprinkler Fitters and paid the prevailing wage for that classification." The trial court also found that G & G did not act in good faith in determining the workers' classification and failing to pay the proper prevailing wage and benefits. Thus, unlike the employer in *Barnhill,* G & G did not make a reasonable good faith legal mistake in failing to pay its

workers their full wages upon termination of their employment. Moreover, because G & G does not set forth all the material substantial evidence in support of these findings, its substantial evidence claim is waived. (*Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881.)

Third, relying on *Lusardi, supra,* 1 Cal.4th at pages 996-997, *Division of Labor Standards Enforcement v. Ericsson Information Systems, Inc.* (1990) 221 Cal.App.3d 114, 129 [270 Cal.Rptr. 75], and *Waters v. Division of Labor Standards Enforcement* (1987) 192 Cal.App.3d 635, 639-642 [237 Cal.Rptr. 546], G & G contends that equity precludes imposition of waiting time penalties because it acted reasonably and in good faith after requesting guidance from the state.

G & G failed to raise this claim in the trial court and has waived it on appeal. (*Forman v. Chicago Title Co.* (1995) 32 Cal.App.4th 998, 1015-1016 [38 Cal.Rptr.2d 790].) Moreover, for the same reasons discussed above, because it is not supported by the trial court's findings and the substantial evidence in support of those findings, G & G has waived its claim. (*Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881.) Accordingly, we hold that the trial court's imposition of waiting time wages was proper.

### DISPOSITION

The judgment and award of damages is affirmed. Plaintiff is awarded its costs on appeal. (Cal. Rules of Court, rule 26(a).)

Davis, J., and Raye, J., concurred.