Filed 10/8/24  P. v. Castillo CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRITNEY CASTILLO,<br><br>    Defendant and Appellant. | B328791<br><br>Los Angeles County<br>Super. Ct. No. TA155907 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Hector E. Gutierrez, Judge.  Affirmed.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie A. Miyoshi and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**SUMMARY**

Defendant Britney Castillo pled nolo contendere to one count of carrying a concealed, unregistered firearm in her car in violation of Penal Code section 25400, subdivision (a)(1). (Further statutory references are to the Penal Code.) After her plea but before sentencing, the United States Supreme Court decided *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*). *Bruen* held New York's firearms licensing scheme was constitutionally invalid for requiring an applicant to show "proper cause" to get a concealed carry license; along the way, *Bruen* noted California's "good cause" requirement was also unconstitutional. The day after the *Bruen* decision, the California Attorney General issued a legal alert instructing local officials not to require proof of good cause for issuing a concealed carry permit.

Defendant filed a motion to dismiss the count of which she was convicted on the ground the licensing statute was unconstitutional. The trial court denied her motion. Now she appeals, contending her conviction should be reversed because the statutory scheme upon which her plea was based is facially invalid under the Second Amendment.

We conclude, as other Courts of Appeal have done, that defendant has standing to make a facial challenge to the statutory scheme on which her conviction was based. On the merits, we likewise join other Courts of Appeal that have concluded, in similar circumstances, that the "good cause" requirement is severable, and the statutory scheme then in effect was not otherwise facially unconstitutional by virtue of its use of the term "may issue" a license rather than "shall issue" a license.

Accordingly, we affirm defendant's conviction.

## FACTS

On October 9, 2021, defendant was a passenger in her car, driven by her companion who brandished and fired a gun at a motorist. During a later search of the car, police found two firearms and ammunition hidden behind the glove compartment. Defendant and her companion were arrested.

On June 10, 2022, defendant pled no contest to a violation of section 25400, subdivision (a)(1), which prohibits carrying a firearm that is capable of being concealed upon the person within a vehicle that is under the person's control or direction. Defendant's sentencing was put over for six months to allow her to satisfy conditions under which the charge would be reduced to a misdemeanor; if she did not complete those requirements, she would be sentenced to two years of formal probation with conditions.

On June 23, 2022, the *Bruen* decision was issued, and on December 12, 2022, defendant filed her motion to dismiss, which the trial court denied. Plaintiff filed a timely appeal from the trial court's January 25, 2023 judgment.

## DISCUSSION

We begin by noting that our discussion is directed to the licensing statutes in effect when defendant was convicted. Since that time, the Legislature has amended the statutes in several ways, including use of the term "shall issue" instead of "may issue," and elimination of "good cause" and "good moral character" requirements. (See, e.g., Pen. Code, § 26150, subds. (a)(1)-(2) & (b), as amended by Stats. 2023, ch. 249, § 10, eff. Jan. 1, 2024.)

## 1.   Standing

Respondent contends at some length that defendant does not have standing to challenge California's firearm licensing scheme.  We disagree.

An extended discussion of respondent's contention is unnecessary.  Respondent fails to describe the applicable principle, and likewise fails to cite any California case post-*Bruen* that finds a defendant lacks standing to bring a facial challenge to California's firearm statutes.  Nor does respondent make any effort to explain why the post-*Bruen* California cases that find defendants have standing to bring facial challenges are mistaken.

The relevant principle was established in a different context in *Smith v. Cahoon* (1931) 283 U.S. 553 (*Smith*).  The high court stated:  "[T]he principle is well established that when a statute, valid upon its face, requires the issue of a license or certificate as a condition precedent to carrying on a business or following a vocation, one who is within the terms of the statute, but has failed to make the required application, is not at liberty to complain because of his anticipation of improper or invalid action in administration.  [Citations.]  This principle, however, is not applicable where a statute is invalid upon its face and an attempt is made to enforce its penalties in violation of constitutional right."  (*Id.* at p. 562.)

Defendant brings only a facial challenge to the statutory scheme under which she was convicted.  Under the *Smith* principle, defendant was not required to apply for a license in order to challenge the statutory scheme on its face.  California courts deciding the issue post-*Bruen* agree.  (See *In re D.L.* (2023) 93 Cal.App.5th 144, 156 (*D.L.*) [juvenile defendant who did not apply for a public carry license had standing "because he is

4

challenging the *facial* constitutionality of a criminal statute under which he has been convicted"]; see also *People v. Mosqueda* (2023) 97 Cal.App.5th 399, 403 (*Mosqueda*) ["agree[ing] with our judicial peers" that defendants charged with unlawfully carrying a concealed firearm "had standing to raise the defense by demurrer"]; *In re T.F.-G.* (2023) 94 Cal.App.5th 893, 902, 912–913 & fn. 16 [juvenile defendant charged with carrying a loaded firearm not registered to him had standing to raise a facial challenge to the statute under which he was convicted].) For an extended analysis of the standing issue, see *D.L.,* at pages 156–161.

## 2. The Merits

### a. *Bruen*

Several California cases describe the *Bruen* decision in detail. (See, e.g., *D.L., supra,* 93 Cal.App.5th at pp. 150–153.) We give an abbreviated description here.

*Bruen* held "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." (*Bruen, supra,* 597 U.S. at p. 17.) "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " (*Id.* at p. 24.)

Applying this standard, *Bruen* concluded New York's "proper cause" requirement was unconstitutional. (*Bruen, supra,* 597 U.S. at p. 39.) The court found the plain text of the Second Amendment "presumptively guarantees petitioners . . . a right to 'bear' arms in public for self-defense." (*Bruen,* at p. 33.) After an extensive historical analysis, the court found the government did

5

not meet its burden to identify "an American tradition justifying the State's proper-cause requirement. The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." (*Id*. at p. 70.) "Apart from a few late-19th-century outlier jurisdictions, American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense," or required "law-abiding, responsible citizens" to demonstrate a special need for self-defense. (*Ibid*.)

It was clear from *Bruen* that California's "analogue[]" to the "proper cause" standard—the "good cause" requirement in former section 26150—is also unconstitutional. (*Bruen, supra,* 597 U.S. at p. 15 & fn. 2.)

### b.     The statutory framework and severability

California's statutory framework regulating firearms is " 'multifaceted' "; the concealed carry licensing scheme in effect at the time is described in detail in *D.L., supra,* 93 Cal.App.5th at pages 153–155. The *Mosqueda* case provides a brief summary: "Carrying a concealed handgun in public, whether loaded or unloaded, is generally prohibited unless the individual obtains a license. [Citation.] The county sheriff or chief of police 'may issue' a license to carry a concealed handgun upon proof that 'good cause' exists for issuing the license. [Citations, including former § 26150.] The applicant must be fingerprinted and pass a background check and must also prove that he or she is of 'good moral character,' resides or works in the issuing county or city, and has completed a firearm safety course." (*Mosqueda, supra,* 97 Cal.App.5th at p. 402.)

While *Bruen* invalidated the "good cause" requirement, California Courts of Appeal have thus far held the good cause requirement is severable from the remainder of the licensing framework. The principles of severability and their application to the concealed carry licensing scheme are described in detail in *D.L., supra,* 93 Cal.App.5th at pages 162–164. Briefly stated, there is a presumption in favor of severability of an unconstitutional provision of a statute. (*Id.* at p. 162.) In the absence of language confirming or prohibiting severability, the criteria are whether a provision is grammatically, functionally, and volitionally separable. (*Id.* at p. 163.) (Volitional separability refers to whether the Legislature would have adopted the remainder of the statute if it had foreseen the partial invalidation of the statute. (*Ibid.*))

We agree with *D.L.*'s severability analysis, and need not repeat it here because defendant does not challenge the point, except to claim that the severability doctrine "may not be applied retroactively to save a conviction." By this, defendant apparently means that in criminal cases, the severability doctrine cannot be applied if the statute was unconstitutional on its face when the crime was committed. We disagree. *D.L.*, like this case, involved a pre-*Bruen* conviction, and rejected the same contention. (*D.L., supra,* 93 Cal.App.5th at pp. 164–165.)

Defendant relies on *Smith, supra,* 283 U.S. 553. *Smith*, the reader will recall, held that a criminal defendant may bring a facial challenge to an unconstitutional licensing statute even if he or she never applied for a license. (*Id.* at p. 562.) *Smith* also held that the statute's severability or savings clause did not matter, because "no line of severance is indicated in the terms of the Act" (*id.* at p. 563), and "until such separation has been accomplished

7

by judicial decision, the statute remains with its inclusive purport, and those concerned in its application have no means of knowing definitely what eventually will be eliminated and what will be left" (*id.* at pp. 563–564).

Smith does not help defendant here.  The defendant in *Smith* was a private carrier for hire, charged with operating without having obtained a certificate of public convenience and necessity, and without having paid the required tax.  (*Smith, supra,* 283 U.S. at p. 556.)  The statute, containing those and many other regulatory requirements, such as a schedule of tariffs and the giving of a bond (*id.* at pp. 557–560), made no distinction between common carriers and a private carrier like the defendant (*id.* at p. 562).  The court observed that "[s]uch a scheme of regulation of the business of a private carrier, such as the [defendant] is manifestly beyond the power of the State."  (*Id.* at p. 563.)  A severance "so as to afford one scheme for common carriers and another for private carriers . . . would be to make the statute, until such severance was determined by competent authority, void for uncertainty."  (*Id.* at p. 564.)  Further:  "It is idle to say that one could take a statute of this sort, establishing requirements binding upon private and common carriers alike, and divide its terms so as to make a valid scheme applicable to private carriers."  (*Ibid.*)

In short, in *Smith* "no line of severance is indicated in the terms of the Act."  (*Smith, supra,* 283 U.S. at p. 563.)  We agree with *D.L.*'s summary:  In *Smith,* "[t]here really was no way to know 'what eventually [would] be eliminated and what [would] be left' after eliminating the unconstitutional aspects of the law [*Smith,* at p. 564], because the requirements of the lawful and unconstitutional aspects of it were intertwined and not

8

functionally or volitionally severable. Here, unlike *Smith,* a valid firearm licensing framework remains even if the 'good cause' requirement is severed." (*D.L., supra,* 93 Cal.App.5th at p. 164, first and fourth brackets added.)

Defendant also cites *In re Porterfield* (1946) 28 Cal.2d 91, telling us that *Porterfield* "[c]iting *Smith, . . .* rejected the same retroactive severance argument." Defendant tells us nothing about the ordinance in *Porterfield* or why it was invalidated, and we will not lengthen this opinion by responding to arguments not made.

### c. The statute's "may issue" provision

That brings us to the principal point of defendant's argument. Defendant contends that even when we sever the "good cause" requirement, the remainder of the statute is unconstitutional because of the "may issue" language. Defendant tells us it is "unnecessary . . . to address the validity of the three surviving criteria." (Those criteria were good moral character, residency and a course of training.) That is because, according to defendant, the statute's "may issue" language "provides licensing authorities discretion to issue or not issue a license *even when the applicant has satisfied all the enumerated criteria."* We do not agree.

Defendant relies on *Gifford v. City of Los Angeles* (2001) 88 Cal.App.4th 801, 805, where the court stated that the predecessor statute to section 26150 "gives 'extremely broad discretion' to the sheriff concerning the issuance of concealed weapons licenses [citation] and 'explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements.' " *Gifford* concerned the licensing authority's discretion as it relates to the "good cause"

9

requirement, and the other cases cited in *Gifford* or cited by defendant appear to do so as well, or to be otherwise off the point.[1]  None of them stands for the proposition that the "may issue" language alone confers unfettered discretion on the licensing authorities.  Indeed, *Gifford* involved a stipulated judgment in which the Los Angeles Police Department stated that it " 'recognizes that [the statute] requires the issuance of licenses to persons of good character who have good cause to carry a concealed firearm for the defense of themselves or others or in pursuing their livelihood.' "  (*Gifford,* at p. 803; see *id.* at p. 806 ["Nothing in the judgment requires the Police Department

---

[1]     *Gifford* quoted *Erdelyi v. O'Brien* (9th Cir. 1982) 680 F.2d 61, which affirmed the denial of a concealed-carry license to an employee of a licensed private investigator.  (*Erdelyi,* at pp. 62–63; see *id.* at pp. 63–64 "[w]here state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field," initial applicants had no property right in concealed weapons licenses; nor did the applicant have a liberty interest].)  Defendant also cites *Nichols v. County of Santa Clara* (1990) 223 Cal.App.3d 1236, which refers to a sheriff's "extremely broad discretion" concerning issuance of concealed carry licenses (*id.* at p. 1241; see *id.* at p. 1239 [sheriff had discretion to revoke the license of the president of a weapons manufacturer without a " 'due process hearing,' " because licensee had no protected property or other interest in such a license]); and *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 656 (Public Records Act required disclosure of applications of persons who had applied for a concealed weapon permit; "[i]f the press and the public are precluded from learning the names of concealed weapons' licensees and the reasons claimed in support of the licenses, there will be no method by which the public can ascertain whether the law is being properly applied or carried out in an evenhanded manner").

10

to renew the licenses . . . without a current showing of good cause."].)

More importantly, defendant fails entirely to discuss or attempt to distinguish the precedent that *is* precisely on point: *Mosqueda, supra,* 97 Cal.App.5th 399. *Mosqueda* observed that the *Bruen* majority did not hold that "may issue" laws are *facially* unconstitutional, and "[w]hether a 'may issue' regime operated as a 'shall issue' regime was an issue for an as-applied challenge, not a facial challenge." (*Mosqueda,* at p. 412.) We agree with that analysis.

By way of background, *Bruen* observed that "the vast majority of States—43 by our count—are 'shall issue' jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability. Meanwhile, only six States and the District of Columbia have 'may issue' licensing laws, under which authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the relevant license." (*Bruen, supra,* 597 U.S. at pp. 13–15, fn. omitted.)

In a footnote identifying the 43 "shall issue" jurisdictions, the court observed that three other states (Connecticut, Delaware, and Rhode Island) "have discretionary criteria but appear to operate like 'shall issue' jurisdictions. [Citations.] Although Connecticut officials have discretion to deny a concealed-carry permit to anyone who is not a 'suitable person,' [citation], the 'suitable person' standard precludes permits only to

11

those 'individuals whose conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon.' [Citation.] As for Delaware, the State has thus far processed 5,680 license applications and renewals in fiscal year 2022 and has denied only 112. [Citation.] . . . Finally, Rhode Island has a suitability requirement, [citation], but the Rhode Island Supreme Court has flatly denied that the '[d]emonstration of a proper showing of need' is a component of that requirement." (*Bruen,* 597 U.S. at p. 13, fn. 1.)

We agree with *Mosqueda*'s conclusion: "The *Bruen* court's citation to these statutes as 'shall issue' statutes demonstrated the court was not facially condemning licensing schemes based solely on their use of 'may issue' language or the exercise of discretion. The court's language that these jurisdictions 'appear to operate like "shall-issue" jurisdictions' (*Bruen, supra*, 597 U.S. at p. 13, fn. 1) indicates that, unless it can be determined from the face of the provision, whether a licensing scheme vests an amount of discretion in licensing authorities that exceeds what the Second Amendment allows is an issue best decided in as-applied challenges, not facial challenges. This is because the argument of whether discretion was unlawfully exercised would not apply in all circumstances." (*Mosqueda, supra,* 97 Cal.App.5th at p. 413; see also *D.L., supra,* 93 Cal.App.5th at p. 166 ["D.L.'s new argument concerning the 'may issue' language . . . is an 'as applied' constitutional challenge and not a facial challenge because the argument would not apply in all circumstances. . . . Rather, it would only apply where the sheriff or police chief refused to issue a license without articulating a reason for the rejection."].)

12

Defendant insists that Justice Kavanaugh's concurring opinion in *Bruen* "condemned" California's may-issue licensing scheme "even without a 'good cause' in the picture." We do not see it that way. Justice Kavanaugh wrote separately "to underscore two important points about the limits of the Court's decision." (*Bruen, supra,* 597 U.S. at p. 79 (conc. opn. of Kavanaugh, J.).) One of those points was that the high court's decision "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." (*Ibid.*) Justice Kavanaugh summarized this point by stating, "Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so. Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense *so long as those States employ objective licensing requirements like those used by the 43 shall-issue States.*" (*Id.* at p. 80, italics added.)[2]

In short, Justice Kavanaugh condemned "unchanneled discretion for licensing officials and the special-need requirement" (*Bruen, supra,* 597 U.S. at p. 79 (conc. opn. of Kavanaugh, J.)), but he did *not* equate every "may issue" statute with "unchanneled discretion."

Defendant brought only a facial challenge to California's concealed-carry licensing statutes. " ' "To support a determination of facial unconstitutionality, voiding the statute as

[2]     Justice Kavanaugh's second point was that, as the majority stated, the Second Amendment " 'is neither a regulatory straightjacket nor a regulatory blank check,' " and allows a variety of gun regulations. (*Bruen, supra,* 597 U.S. at p. 80 (conc. opn. of Kavanaugh, J.)

13

a whole,"'"defendant "'"must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions."'" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)  That is not the case here.

We note one other point.  Defendant mentions in passing that the licensing statute "needs to . . . delete the good moral character criterion" and that good moral character is "an issue not raised in *Bruen,*" citing *Konigsberg v. State Bar of California* (1957) 353 U.S. 252, 263 ("the term, by itself, is unusually ambiguous" and "can be defined in an almost unlimited number of ways").  Defendant does not elaborate or present the point as a separate issue, and as we have mentioned, specifically stated that it is "unnecessary . . . to address the validity of the three surviving criteria," one of which was good moral character.

We may consider the point forfeited.  "An appellant must '[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority.'  [Citations.]  Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.)  In any event, even assuming for the sake of argument that the good moral character requirement was "not consistent with the nation's historical tradition of firearm regulation and is unconstitutional," we agree with *Mosqueda* that it is severable "for the same reasons the good cause provision is grammatically, functionally, and volitionally severable." (*Mosqueda, supra,* 97 Cal.App.5th at p. 411.)

Accordingly, we reach the same conclusion as *Mosqueda*: "Because section 26150's 'good cause' and 'good moral character' requirements are severable, and because *Bruen* did not facially

invalidate the statute's 'may issue' provision, section 26150 does not facially violate the Second Amendment.  Since the statute is a valid licensing provision and provides a valid means for citizens to exercise their right under *Bruen* to possess a handgun in public for self-defense, [defendant's] Second Amendment rights are not violated when the state enforces that provision criminally." (*Mosqueda, supra,* 97 Cal.App.5th at p. 414.)

## DISPOSITION

The judgment is affirmed.


GRIMES, J.


WE CONCUR:




STRATTON, P. J.




VIRAMONTES, J.

15