55 Cal.Rptr.3d 585 (2007)
148 Cal.App.4th 39
AMALGAMATED TRANSIT UNION, LOCAL 1756, AFL-CIO, et al., Petitioners,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
First Transit, Inc., et al., Real Parties in Interest.
No. B191879.
Court of Appeal of California, Second District, Division Eight.
February 28, 2007.
As Modified on Denial of Rehearing March 22, 2007.
*587 Neyhart, Anderson, Flynn & Grosboll, John L. Anderson, Orange, and Scott M. De Nardo, San Francisco, for Petitioners.
No appearance for Respondent.
McMahon Berger, James N. Foster, Jr. and Michelle M. Cain; Kampe & Kampe and K.W. Kampe, III for Real Party in Interest First Transit, Inc.
Gleason & Favarote, Paul M. Gleason and Torey J. Favarote for Real Party in Interest ATC/Vancom, Inc.
Jenkens & Gilchrist, Margaret Rosenthal and Sabrina L. Shadi, Los Angeles, for Real Parties in Interest Progressive Transportation Services, Inc. and Coach USA Transit Services.
Littler Mendelson and Theodore R. Scott, San Diego, for Real Party in Interest Laidlaw Transit Services, Inc.
*586 BOLAND, J.

SUMMARY
In this writ proceeding, we hold:
(1) An individual's assignment of a cause of action to a third party does not carry with it the individual's statutory right to sue in a representative capacity conferred under the Labor Code Private Attorneys General Act of 2004 (Labor Code section 2699) and under the unfair competition law (Business and Professions Code section 17203).
(2) Section 17203 of the unfair competition law, as amended by Proposition 64, providing that representative claims may be brought only if the injured claimant "complies with Section 382 of the Code of Civil Procedure," means that private representative claims must meet the procedural requirements applicable to class action lawsuits.

FACTUAL, LEGAL AND PROCEDURAL BACKGROUND
Under the Labor Code, an employer who fails to provide required meal and rest periods is required to pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided. (Lab.Code, § 226.7, subds.(a) & (b).) Employers who violate regulations governing hours and days of work are also subject to civil penalties under Labor Code section 558. The Labor Code Private Attorneys General Act of 2004 (PAGA) authorizes an aggrieved employee to bring a civil action, on behalf of himself or herself and other current or former employees, to recover civil penalties for violations of any section of the Labor Code that provides for assessment and collection of civil penalties by the Labor and Workforce Development Agency or any of its departments or divisions. (Lab.Code, § 2699, subd. (a).)
Two labor unions that represent mechanics and transit operators (Unions), along with 17 members or former members of the unions (collectively, plaintiffs), filed a lawsuit against several transit company employers.[1] Plaintiffs alleged the employers failed to provide their employees *588 with the meal and rest periods required by law, and sought unpaid wages estimated at over 10 million dollars, an award of civil penalties estimated at over $2.6 million, and other relief. In a second cause of action, plaintiffs asserted the employers' failure to provide the legally required meal and rest periods violated the unfair competition law (UCL), and sought injunctive relief and restitution of unpaid wages. (Bus. & Prof.Code, § 17200 et seq.) The fourth amended complaint alleged the Unions were suing in their representative capacity on behalf of members who are or were employed by the defendant employers. In addition, the Unions brought the action as assignees of rights transferred to the Unions by over 150 employees and former employees of the defendant employers, "including the right to sue in a representative capacity on behalf of all other current and former aggrieved employees of Defendants. . . ."
At the trial court's suggestion, the parties identified several threshold issues as controlling questions of law, including (1) whether the unions had standing to sue under the UCL and under PAGA; (2) whether the action must be brought as a class action; and (3) whether the payments specified in Labor Code section 226.7 constituted a "penalty" or a "wage." The trial court deferred considering whether section 226.7 payments constitute a penalty or a wage, an issue which is now pending before the Supreme Court in Murphy v. Kenneth Cole Productions, review granted Feb. 22, 2006, S140308.[2] The parties briefed the other issues, a hearing was held, and on April 25, 2006, the trial court ruled, inter alia, that:
 The unions do not have standing to recover civil penalties or attorney fees under PAGA, which requires such actions to be brought "by an aggrieved employee on behalf of himself or herself and other current or former employees. . . ." (Lab.Code, § 2699, subd. (a).)
 The unions do not have standing to sue for violations of the UCL which, as a result of Proposition 64, allows a private party to bring a UCL action only if the person "has suffered injury in fact and has lost money or property as a result of such unfair competition." (Bus. & Prof.Code, § 17204.)
 The assignments which the unions obtained from some of their members did not confer standing on the unions to prosecute PAGA, representative or class claims on behalf of all members of the unions.
 Proposition 64's requirement that a person may pursue representative claims, or relief on behalf of Others, only if the person meets the standing requirements "and complies with Section 382 of the Code of Civil Procedure," was intended to impose class action procedures on claims such as those asserted in the complaint.
The Unions filed a petition for writ of mandate and a request for a stay of the trial court proceedings. They requested a writ directing the trial court to vacate its order and enter a new order holding the Unions have standing to recover civil penalties and attorney fees under PAGA; the Unions have standing to sue for violations of the UCL; and the assignments obtained *589 by the Unions confer standing on the Unions to prosecute PAGA and representative claims on behalf of all members of the Unions. This court issued a temporary stay order and directed the real parties in interest to file a preliminary response to the petition, and particularly to discuss whether the assignments from current and former union members to the Unions conferred standing on the Unions. After a preliminary response and a reply from the Unions were filed, the court issued an order to show cause why the trial court should not be compelled to vacate portions of its order and enter a new order, concluding that the causes of action are assignable and that the Unions have complied with the requirements of Code of Civil Procedure section 382.
Written returns were filed by the real parties in interest; the Unions filed a reply; and the order to show cause was heard on November 28, 2006. We now deny the writ petition.

DISCUSSION
The Unions concede they are not "aggrieved employee[s]" under PAGA and have not suffered an "injury in fact" under the UCL. They assert standing to sue based on the assignment to the Unions by some of their members of the members' claims for recovery of wages. They further assert the assignments confer standing upon the Unions to sue in a representative capacity, and that the Unions may sue under the UCL in a representative capacity without meeting the procedural requirements applicable to class actions.
Our conclusions are these:
(1) We agree the Unions have standing as assignees to assert the claims of union members who have assigned to the Unions their rights to recover wages owing to them. The Unions may not, however, assert claims on behalf of members who have not assigned their claims to the Unions.
The assignment of a cause of action, as authorized by Civil Code sections 953 and 954, is the transfer "by the owner" of "a right to recover money or other personal property" in a judicial proceeding. An individual's statutorily conferred right to sue on behalf of others is not itself a cause of action, or any other form of property, that is owned and therefore assignable within the meaning of the Civil Code. Accordingly, while a person may assign his own cause of action to another, the assignment does not carry with it the right to sue in a representative capacity. Nothing in Vermont Agency of Natural Resources v. United States ex rel. Stevens (2000) 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (Vermont Agency), upon which the Unions rely, supports a contrary conclusion. Consequently, the Unions do not have standing under PAGA or the UCL to assert the rights of members who have not assigned their recovery rights to the Unions.
(2) We further conclude that the UCL requirement that a person pursuing relief on behalf of others must both meet standing requirements and "[compl[y] with Section 382 of the Code of Civil Procedure" means, as stated in the Voter Information Guide for Proposition 64, that unfair competition lawsuits on behalf of others, initiated by persons other than the Attorney General and local public prosecutors, must "meet the additional requirements of class action lawsuits." (Voter Information Guide, Gen. Elec. (Nov. 2, 2004) analysis of Prop. 64 by Legislative Analyst, p. 39 (hereafter Guide).)
We address each issue in turn.

A. Although an employee may assign his right to recover money to the Union, such an assignment does not carry with it the employee's statutorily granted right to pursue claims on behalf of others.
The Unions contend they have the right to pursue representative claims on behalf of others because one or more employees with that right assigned their causes of action to the Unions. The Unions' contention necessarily depends upon the premise that a legislative grant of the procedural right to bring a representative action is a type of property, like a cause of action, that can be owned and transferred. *590 We conclude the premise is mistaken.[3] While a cause of action is an intangible form of property that may be assigned by its owner, the right to bring a representative suit on behalf of others is another matter entirely. The right to bring a representative suit is not itself a cause of action (or any other form of property) that is owned and therefore assignable. Unlike causes of action, which arise from obligations or from the violation of property rights of the owner, the right to sue on behalf of others is a procedural mechanism created by the Legislature to facilitate the prosecution of similar claims owned by many different persons. Authorization to bring a representative suit is conferred by the Legislature, and persons authorized to bring suit have no power to assign that authorization to a third party, nor does an assignment of a cause of action include, by operation of law, the authorization to bring a representative suit.
Our conclusion that the right to bring a representative suit on behalf of others is not an assignable property right flows ineluctably from the statutes defining causes of action, as well as from the nature of and the law governing assignments. The Unions' position to the contrary is founded, it appears, on a failure to distinguish between an "injury in fact" or "cause of action," which is most assuredly a transferable property right, and standing to seek relief on behalf of others, which is not. We turn first to the law of assignment and the statutes defining assignable property rights, and then address the specific contentions raised by the Unions.

1. The law of assignment confirms an employee may assign his own cause of action to his union (or to anyone else).
It is settled that California "maintains a policy encouraging the free transferability of all types of property." (Essex Ins. Co. v. Five Star Dye House, Inc. (2006) 38 Cal.4th 1252, 1259, 45 Cal. Rptr.3d 362,137 P.3d 192 (Essex).) Essex observed that a "`chief incident of ownership' " in property is the right to transfer it, a right which applies equally to tangible and intangible forms of property, including causes of action. (Ibid.) The court quoted Civil Code section 954, which states: "`A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner.'" Essex explained that although the assignability of causes of action is derived from the common law, "section 954 had the effect of liberalizing restrictions on the types of actions that may be assigned to a third party." (Essex, supra, 38 Cal.4th at p. 1259, 45 Cal.Rptr.3d 362, 137 P.3d 192.) The only causes of action not transferable or assignable are
"`"`those which are founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries, criminal conversation, seduction, breach of marriage promise, malicious prosecution, and others of like nature. All other demands, claims and rights of action whatever are generally held to be transferable. [Citations.]'"'" (Essex, supra, 38 Cal.4th at *591 p. 1260, 45 Cal.Rptr.3d 362, 137 P.3d 192.)
From these principles, and in the absence of an express statutory prohibition, we necessarily conclude an employee may assign his or her statutory causes of action for recovery of unpaid wages and for UCL violations founded on unpaid wages to the Unions.[4] Claims for unpaid wages are not "`"wrongs of a purely personal nature'"'" (Essex, supra, 38 Cal.4th at p. 1260, 45 Cal.Rptr.3d 362, 137 P.3d 192), and employees may assign their claims to their Unions just as any other person may assign a cause of action "arising out of the violation of a right of property, or out of an obligation. . . ." (Civ.Code, § 954; Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc. (2002) 102 Cal.App.4th 765, 770, 780, 125 Cal.Rptr.2d 804 (Road Sprinkler) [because workers had private statutory remedies against their employers, the assignment of their statutory rights to the union gave the union standing to sue for recovery of unpaid prevailing wages under Labor Code section 1774].)[5]

2. The right to sue in a representative capacity is not a cause of action that may be assigned.
While an employee may assign his own cause of action, the statutes defining causes of action and the law of assignment clearly demonstrate that the right to sue in a representative capacity is not a cause of action, or any other form of property right, and is therefore not assignable, either expressly or by operation of law.
A cause of action  a "thing in action"  has been defined by statute since 1892: "A thing in action is a right to recover money or other personal property by a judicial proceeding." (Civ.Code, § 953.) A thing in action, if it arises "out of the violation of a right of property, or out of an obligation, may be transferred by the owner." (Civ. Code, § 954.) The Legislature may by statute define new legal rights or forms of compensable injury, and authorize recovery for the injury in a judicial proceeding. (See Vermont Agency, supra, 529 U.S. at p. 773, 120 S.Ct. 1858.) But it is the violation of the statute or property right that creates a cause of action in the injured party, who "owns" the cause of action  the right to recover money arising from the violation  and therefore may transfer it. (See id. at pp. 773-774, 120 S.Ct. 1858.)
By contrast, statutory provisions such as those in the UCL and PAGA, which authorize injured or aggrieved persons to seek relief for others as well as for themselves, do not create a cause of action. Any UCL or PAGA cause of action arises from the underlying statutory violation. The UCL, for example, defines unfair competition in section 17200 and in section 17204 allows a person "who has suffered injury in fact and has lost money or property as a result of . . . unfair competition" to seek relief in court. The "cause of action" owned by the injured party under the UCL is the right to redress, given in section 17204, for the violation defined in section 17200. Similarly, PAGA gives an *592 aggrieved employee the right to recover civil penalties, "on behalf of himself or herself and other current or former employees," for violations of other provisions of the Labor Code.[6] (Lab.Code, § 2699, subd. (a).) Again, the "right to recover money"  the cause of action  arises from the underlying violation of the Labor Code (here, the failure to give meal or rest periods, for which section 226.7 requires payment to the employee). The "aggrieved employee" is aggrieved by the failure to give the meal or rest periods required under section 226.7, not by any statutory violation created by PAGA. Consequently, PAGA does not create a cause of action that may be transferred by its owner. The right it confers to recover civil penalties for other Labor Code violations on behalf of others, by definition, is not a cause of action, is not owned by the person on whom it is conferred and, as a necessary consequence, is not assignable. (See Civ.Code, §§ 953 & 954.)
In short, section 17203 of the UCL and section 2699 of the Labor Code merely identify circumstances under which a person may pursue relief for a cause of action owned by someone else. The right to do so cannot be assignable for that very reason: in a representative action, the injuries for which the representative is authorized to seek relief belong to others. Stated differently, because the assignor (the employee), although authorized by section 17203 or PAGA to bring an action on behalf of others, has no ownership interest in the causes of action owned by others, the employee necessarily has no right, expressly or by operation of law, to transfer those causes of action to a third party.

3. The right to sue in a representative capacity is not an "incident" of an employee's cause of action that is assigned by operation of law along with the cause of action.
The Unions insist the legal effect of an employee's assignment "is to transfer each assignor's `injury in fact' to the Union assignee and to grant the Union assignee standing to sue in a representative capacity under Bus. & Prof.Code § 17203 and Labor Code § 2699(a)." As we have seen, the first prong of the contention is correct: an assignor in effect transfers his `'injury in fact," and his right to recover for it, to his assignee. The second prong of the contention, however, is a non sequitur, and no authority supports it.
The Unions rely solely on the general principle that "[a]n assignment carries with it all rights of the assignor" (1 Witkin, Summary of Cal. Law (10th ed.) Contracts, § 734), and "[t]he assignee `stands in the shoes' of the assignor and his rights are no greater than those of the assignor." (Road Sprinkler, supra, 102 Cal.App.4th at p. 775, 125 Cal.Rptr.2d 804.) While these principles are, of course, correct, the Unions apply them incorrectly when they maintain, in effect, that a statutory right to pursue claims on behalf of others is an "incident" of the assignor's right to recover compensation for his own injury. The cases cited by the Unions merely teach that, even when an assignment is silent, any incidents of the property right transferred are, by operation of law, transferred with the assignment. (See Civ.Code, § 1084["[t]he transfer of a thing transfers also all its incidents, unless expressly excepted"].) For example:

*593  Champion Home Builders Co. v. Sipes (1990) 219 Cal.App.3d 1415, 1423-1424, 269 Cal.Rptr. 75, held that a finance company's assignment to plaintiff of defendants' debt included the defendants' personal guaranties of that debt, even though there was no express assignment of the guaranties. The "transfer of the debt from Champion Credit to Champion included by operation of law the guaranty because the transfer of a thing transfers the incidents." (Ibid., footnote omitted.)
 Mitchell v. Shoreridge Oil Co. (1938) 24 Cal.App.2d 382, 384, 75 P.2d 110, held that a mechanics lien is "a mere incident of the debt which it secures and . . . the assignment of the debt carries with it the hen," entitling the assignee of the debt to enforce the liens. "The assignee . . . became the legal owner of the claims and the hens which secured their payment."[7] (Ibid.)
 Adjustment Corp. v. Marco (1929) 100 Cal.App. 338, 279 P. 1006 held that an assignment by a landlord of a claim for $2,000 in rent due included the right to recover the attorney fees provided in the lease: "The right to such fees in that event [a suit to enforce the lessor's rights] was an incident to the demand, and a valuable one." (Id. at p. 341, 279 P. 1006.) The assignee was entitled to recover the fee "in precisely the same manner as his assignors could have done." (Id at pp. 342-343, 279 P. 1006.) The court observed the principle that "transfer of a thing transfers also all its incidents, unless expressly excepted" (Civ.Code, § 1084) has been frequently applied. For example, it is "uniformly held that the transfer of the note without mention of the security carries with it the benefit of the security." (Adjustment Corp. v. Marco, supra, 100 Cal.App. at p. 341, 279 P. 1006.)
 Essex, supra, 38 Cal.4th 1252, 45 Cal. Rptr.3d 362, 137 P.3d 192, held that when an insured assigned a bad faith cause of action against an insurer, the assignee received the assignor's right to recover the policy benefits in full, including attorney fees incurred in prosecuting the assigned claim. "As the assignee of [the insured's] claim against [the insurer], [the assignee] stands in his shoes, and so may assert his right to recover . . . fees incurred in prosecuting the assigned claim." (Id at p. 1264, 45 Cal.Rptr.3d 362,137 P.3d 192.)
The cited cases show that the assignee "stands in the shoes" of the assignor with respect to the assignor's recovery rights  not for other purposes unrelated to the assignor's right to recover his own property. (See Adjustment Corp. v. Marco, supra, 100 Cal.App. at p. 342, 279 P. 1006 ["the assignee stands in the shoes of the assignor and whatever right of recovery was in the assignor on a rescission of the contract passed with the contract to the assignee"].)[8] The "incidents" that accompany *594 a right to recover money  the guaranty along with the debt, the security along with the note, the mechanic's lien along with the debt, the right to attorney fees along with the bad faith cause of action  are themselves property rights owned by the assignor and therefore transferred by operation of law along with the thing assigned. The right to bring a representative suit, on the other hand, is a procedural right conferred by the Legislature to facilitate the prosecution of claims  not an "incident" of the employee's right to recover unpaid wages that is in any sense "owned" and therefore transferable by the employee.[9]

4. Contrary to the Unions' contention, federal cases do not hold that an assignment carries with it the assignor's right to sue in a representative capacity.
The Unions press the argument that an assignment "carries with it the right of an assignee to sue in a representative capacity," asserting that Vermont Agency and other federal cases have so held. They have not. Vermont Agency and other federal cases merely apply the ordinary principle that the assignee of a claim has standing to assert the injury in fact of the assignor. (Vermont Agency, supra, 529 U.S. at p. 773, 120 S.Ct. 1858.) Vermont Agency held that a private individual (a qui tarn relator) has standing to maintain a suit in federal court on behalf of the United States under the False Claims Act, even though the qui tam relator has suffered no cognizable injury in fact for Article III standing purposes. (Id. at pp. 768, 772-773, 120 S.Ct. 1858.) The court found an adequate basis for the qui tam relator's standing in "the doctrine that the assignee of a claim [the qui tam relator] has standing to assert the injury in fact suffered by the assignor [the United States]." (Id at p. 773, 120 S.Ct. 1858.) It regarded the False Claims Act as "effecting a partial assignment of the Government's damages claim," so that "the United States' injury in fact suffices to confer standing on [the qui tam relator]." (Id at pp. 773-774,120 S.Ct. 1858, fn. omitted.)
Vermont Agency stands for the proposition that the assignee of a claim has standing to assert the injury in fact suffered by the assignor  a proposition with which we fully agree. The court's reference to "`representational standing' on the part of assignees" (Vermont Agency, supra, 529 U.S. at p. 773, 120 S.Ct. 1858) refers only to the assignee's "representation" of the assignor, that is, the assignee's standing to assert, the assignor's injury in fact  not to any right in the assignee to represent someone other than the assignor. In short, Vermont Agency does not suggest that an assignment by a person with an injury in fact-merely because the person is authorized by statute to seek relief for others as well as for himself or herself carries with it the assignor's procedural *595 right to sue in a representative capacity.[10] In effect, this would permit an assignor to transfer causes of action he or she does not own to someone else. Any such right would turn the law of assignment on its head.

B. The provision of Proposition 64 stating that representative claims may be pursued only if the claimant "complies with Section 382 of the Code of Civil Procedure" means that claims must comply with class action procedures.
The Unions contend Proposition 64, an initiative measure approved at the November 2004 general election, does not require class certification of representative actions brought under the UCL. Their argument is based on the text of the proposition, which states that a person may pursue representative claims "only if the claimant . . . complies with Section 382 of the Code of Civil Procedure" (section 382). (Bus. & Prof.Code, § 17203.) Since its enactment in 1872, section 382 has stated that a person may sue for the benefit of others either (1) "when the question is one of a common or general interest, of many persons," or (2) "when the parties are numerous, and it is impracticable to bring them all before the court. . . ." (Code Civ. Proc., § 382.) According to the Unions, the "compliance] with Section 382" required by Proposition 64 "can only mean that the plaintiff must demonstrate that it is a plaintiff having the capacity to sue as a representative plaintiff in compliance with the standards set forth in CCP § 382." We are compelled to disagree.
A voter initiative such as Proposition 64 is construed using the familiar principles governing statutory construction. (Harwich v. Superior Court (1999) 21 Cal.4th 272, 276, 87 Cal.Rptr.2d 222, 980 P.2d 927.) The "`fundamental purpose . . . is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]'" (Ibid.) To determine intent, we begin with the language of the statute, but it is a settled principle that statutory language should not be given a literal meaning if doing so would result in absurd consequences that were not intended. The "`"intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]"'" (Ibid.) A statute is read with reference to the scheme of law of which it is part and in light of the electorate's intent. (Robert L. v. Superior Court (2003) 30 Cal.4th 894, 901, 135 Cal. Rptr.2d 30, 69 P.3d 951.) When language is ambiguous, we consult "`"other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet. [Citations.]"'" (Ibid.) In short, the task of construing a voter initiative "`is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent. [Citation.]'" (Ibid.)
Adhering to settled principles for construing a voter initiative, we find the only possible conclusion is that "compli[ance] with Section 382" means compliance with class action procedures. The intent of the lawmakers  in this case, the voters  is evident from the most cursory review of the information presented to the electorate to inform the voting on Proposition 64. For example:

*596  The "Ballot Measure Summary" in the Voter Information Guide prepared by the Secretary of State for the November 2, 2004 election explains "What Your Vote Means."[11] It states that a "yes" vote on Proposition 64 means that "a person pursuing such [unfair competition] claims on behalf of others would have to meet the additional requirements of class action lawsuits." (Guide, supra, ballot measure summary of Prop. 64, p. 6.) It states that a "no" vote means that "a person could bring such a lawsuit without meeting the additional requirements of class action lawsuits." (Ibid.)
 The "Official Title and Summary" of Proposition 64, prepared by the Attorney General, states that the initiative statute: `Requires private representative claims to comply with procedural requirements applicable to class action lawsuits." (Voter Information Guide, supra, title and summary of Prop. 64, p. 38.)
 The "Analysis by the Legislative Analyst" repeatedly refers to class action requirements. Thus:
 The background section of the legislative analysis states:
"Currently, persons initiating unfair competition lawsuits do not have to meet the requirements for class action lawsuits. Requirements for a class action lawsuit include (1) certification by the court of a group of individuals as a class of persons with a common interest, (2) demonstration that there is a benefit to the parties of the lawsuit and the court from having a single case, and (3) notification of all potential members of the class." (Guide, supra, analysis of Prop. 64 by Legislative Analyst, p. 38.)
 Describing the Proposition 64 proposal, the legislative analysis states:
"This measure makes the following changes to the current unfair competition law: [¶¶] Requires Lawsuits Brought on Behalf of Others to Be Class Actions. This measure requires that unfair competition lawsuits initiated by any person, other than the Attorney General and local public prosecutors, on behalf of others, meet the additional requirements of class action lawsuits." (Guide, supra, analysis of Prop. 64 by Legislative Analyst, pp. 38-39.)
The Unions point out that Code of Civil Procedure section 382 itself contains no class certification requirements and authorizes representative suits that are not class actions, as well as class actions. (See Residents of Beverly Glen, Inc. v. City of Los Angeles (1973) 34 Cal.App.3d 117,129, 109 Cal.Rptr. 724 (Beverly Glen) [nonprofit corporation had standing to represent its injured members in suit to set aside a conditional use permit; "[i]t may also be true that while all class suits are representative in nature, all representative suits are not necessarily class actions"].)[12] *597 We do not suggest otherwise. The question, however, is what the electorate meant when it said that a person may pursue representative claims under the UCL "only if the claimant . . . complies with Section 382 of the Code of Civil Procedure." The Secretary of State's official voter information guide leaves no doubt what the electorate meant, and this court is not free to reach a different conclusion.
The Unions protest that the text of Proposition 64, including its "Findings and Declarations of Purpose," says nothing about the intent to require class certification in UCL representative suits. Indeed, the text refers only to "compliance] with Section 382." This does not assist the Unions, because it shows the language of Proposition 64 is ambiguous. Section 382 is a general statute, authorizing suits by "one or more . . . for the benefit of all."[13] Depending on the context, sometimes compliance with section 382 means class certification is required; sometimes it means an organization may represent its injured members, such as in Beverly Glen; and sometimes it means something else, such as that one trust beneficiary may maintain a representative action on behalf of other beneficiaries. (Bowles v. Superior Court (1955) 44 Cal.2d 574, 587, 283 P.2d 704.) The ambiguity requires us to consult "`"other indicia of the voters' intent, particularly the analyses . . . in the official ballot pamphlet."' [Citations.]" (Robert L. v. Superior Court, supra, 30 Cal.4th at p. 901, 135 Cal.Rptr.2d 30, 69 P.3d 951.) As we have seen, consulting the official ballot pamphlet completely eliminates any ambiguity. The voters intended to amend the UCL to require a private person initiating a UCL lawsuit to comply "with procedural requirements applicable to class action lawsuits" (Guide, supra, title and summary of Prop. 64, p. 38), and we are not at liberty to conclude otherwise.[14]

DISPOSITION
The order to show cause is discharged. The Unions' petition for writ of mandate and/or prohibition or other appropriate relief is denied and this court's stay of the trial court's order is vacated. The real parties in interest are entitled to recover their costs.
I concur: RUBIN, J.
COOPER, P.J., Concurring and Dissenting.
I respectfully dissent from a portion of the opinion of the majority in this case. In specific, I disagree with the conclusion of the majority that "the [two labor unions that represent mechanics and transit operators *598 (Unions) ] do not have standing under [the Labor Code Private Attorneys General Act of 2004 (PAGA) ] or [the unfair competition law (UCL) ] to assert the rights of members who have not assigned their recovery rights to the Unions." The majority takes the position that "the right to bring a representative suit is not itself a cause of action (or any other form of property) that is owned and therefore assignable. Unlike causes of action, which arise from obligations or from the violation of property rights of the owner, the right to sue on behalf of others is a procedural mechanism created by the Legislature to facilitate the prosecution of similar claims owned by many different persons. Authorization to bring a representative suit is conferred by the Legislature, and persons authorized to bring suit have no power to assign that authorization to a third party." The majority further argues that the assignment in this case purporting to transfer the right to sue in a representative capacity is not a `transfer of an `injury in fact' from assignor to assignee that confers standing on the assignee. . . ." Therefore, they conclude that even with a valid assignment, the assignee may not transfer his "right to sue in a representative capacity on behalf of current and former employees." I am unable to locate any authority which compels these conclusions urged by the majority, nor does there seem to be a compelling policy or other reason to reach that result.
The majority characterize the Unions' contention as depending upon the mistaken "premise that a legislative grant of the procedural right to bring a representative action is a type of property, like a cause of action, that can be owned and transferred." I believe that this entire approach to the analysis is mistaken. The mistake is to discuss the "right" to bring a representative action as being a "property right" in any aspect. One does not "own" or have "legal title" to the ability to bring a representative action. A representative action is simply a procedural device create ed by the legislature to allow the prosecution of certain claims. Accordingly, I will hereafter refer to the "ability" to bring a representative action, not the "right" to do the same. Thus recast, I posit that the only qualification required, is that the party bringing the representative action meet whatever requirements are set forth by the legislature with respect to that particular case. If, by virtue of an assignment, a Union meets those specifications, then the Union has the ability [nee right] to pursue the cause.
Witkin advises that an assignment may be of either a bilateral contract or of a chose in action, and that "most of the common law restrictions on assignability were eliminated by the provisions of the Civil Code." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 707, p. 794.) A chose of action is the "right to recover money or other personal property by a judicial proceeding" and they are assignable when they arise out of an obligation or out of the violation of a right of property. (Civ.Code, §§ 954, 1458) A cause of action for breach of contract is an assignable chose in action. (Trubowitch v. Riverbank Canning Co. (1947) 30 Cal.2d 335, 339, 182 P.2d 182.) Non-assignable rights are those founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries and other such torts to the person or reputation. (1 Witkin, Summary of Cal. Law, supra, Contracts, § 727.)
The general rule in California which allows assignment of the "right to recovery money or other personal property" within the meaning of Civil Code sections 953 and 954 grants the assignee all of the rights and remedies possessed by the assignor for its enforcement, subject, however, to *599 the defenses which may be urged against the assignor. The enforcement of the assignor's rights by the assignee depends upon the rights of the assignor. (Teater v. Good Hope Dev. Corp. (1942) 55 Cal. App.2d 459, 462,130 P.2d 812.)
I agree however, with the majority that the UCL requirement that a person pursuing relief on behalf of others must both meet the standing requirement and "[compl[y] with Section 382 of the Code of Civil Procedure" and meet the additional requirements of class action lawsuits. The recent amendments to the UCL accomplished by Proposition 64 engrafts class action requirements onto UCL cases, transforming them from representative actions into formal class actions. As such, they must now meet the requirements of California's class action statute.[1] By its terms, Proposition 64 explicitly prohibits any private-party invocation of representative standing unless the party both 1) shows that he or she has standing and 2) "complies with Code of Civil Procedure Section 382"  which in this context means that the party must comply with general class-certification principles. (Bus. & Prof.Code, §§ 17203,17535.)
The policy objective of Proposition 64 to weed out frivolous actions was met by adding the demand that the representative and each member have suffered loss of money or property as a result of unfair competition. However, an assignee acquires the "injury in fact" when a valid assignment is accomplished. The assignment described in this action does no damage to this policy objective. It does not create a frivolous action, it merely allows the injured assignor to grant an assignee the ability to pursue the claim on his or his behalf. The only dubious objective accomplished by eliminating the right to assign such a cause of action is to simply limit the identity of the parties that can functionally maintain the action without regard to the merits of the case.
In the UCL context, the appropriate question is to be decided therefore, is whether the Unions, as an assignee of a party [otherwise fully qualified] can be the class representative in a Business and Professions Code section 17200 case. As noted, Proposition 17203, as amended, withdraws the standing of persons who have not been harmed to represent those who have. By virtue of the assignment, the Unions meet the first requirement and thus have the standing to sue.[2] Furthermore as the California Supreme Court stated in Californians For Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 232, footnote 4, 46 Cal.Rptr.3d 57, 138 P.3d 207, the general language of section Code of Civil Procedure section 382 has been construed as "`authorizing] class suits in California'" and also as "permitting associations to sue on behalf of their members."
The second requirement for a class action is that all of the class members in a properly certified class must satisfy whatever *600 standing requirements would be necessary to maintain a suit in their own right. (See, e.g., Collins v. Safeway Stores, Inc. (1986) 187 Cal.App.3d 62, 73, 231 Cal.Rptr. 638 ["`Each class member must have standing to bring the suit in his [or her] own right.'] [Citations.])" The only limitation that would result from this requirement is that the Unions cannot, as the assignee of a single "injured plaintiff," represent a class made up in part of admittedly uninjured parties.[3]
Labor Code section 2699, subdivision (a) allows "an aggrieved employee on behalf of himself or herself and other current or former employees" to bring a civil action to recover civil penalties pursuant to the procedures set forth in Labor Code section 2699.3.[4] Here again, provided the assigning employee has the necessary injuries to be "aggrieved," there is no reason why the assignee cannot thereafter pursue that employee's claims.[5] The use of an assignment in this fashion does no violence to the concerns expressed by the legislature when it adopted the requirements that there be an "injury in fact" or an "aggrieved employee."
For the reasons stated above: I concur in the result that by virtue of Proposition 64, the Unions are required to bring actions under the UCL as class actions, however, I dissent from the result that the Unions lack standing to sue for claims under PAGA.
NOTES
[1] The plaintiff unions are the Amalgamated Transit Union, Local 1756, AFL-CIO, and the Teamsters Joint Council 42. The employers named in the fourth amended complaint are First Transit, Inc., Progressive Transportation Services, Inc., Coach USA Transit Services, and Laidlaw Transit Services, Inc.
[2] In Murphy v. Kenneth Cole Productions, the Supreme Court directed the parties to brief and argue the question whether a claim for the required payment of "one additional hour of pay at the employee's regular rate of compensation" for each day that an employer fails to provide mandatory meal or rest periods is governed by the three-year statute of limitations for a claim for compensation or the one-year statute of limitations for a claim for payment of a penalty.
[3] In a petition for rehearing, the Unions asserted they do not rely on the language in the employee's assignment, which states that the employee's assignment of his right to sue to recover wages owing to him "includ[es] my right to sue in a representative capacity At oral argument counsel stated this language was "a mistake" and is "surplusage" because, by virtue of the assignment of the employee's cause of action or injury, the assignee-union has sill the rights the employee had, including the right to sue in a representative capacity. We agree it does not matter whether or not the assignment by its terms purports to assign the right to sue in a representative capacity. We disagree, however, with the Unions' conclusion that the assignment of the employee's cause of action effectively transfers "[a]ll of the rights to which the assignor may have been entitled had the assignor brought the action himself . . . ." In short, the question at issue is the legal effect of the assignment of the employee's cause of action, that is, whether or not it includes, by operation of law, the employee's right to sue in a representative capacity.
[4] We do not decide any issue concerning the validity vel non of the particular assignments executed by the employees in this case.
[5] We emphasize that the trial court did not decide, and we do not decide, whether claims under Labor Code section 226.7 are claims for unpaid wages (as characterized by the Unions in their complaint) or claims for statutory penalties. The Supreme Court has held that a right to recover that is in the nature of a statutory penalty is not assignable. (Esposti v. Rivers Brothers, Inc. (1929) 207 Cal. 570, 573, 279 P. 423.) As previously mentioned, the question whether section 226.7 payments constitute a penalty or a wage for statute of limitations purposes is an issue now pending before the Supreme Court. (See footnote 2, ante, and accompanying text.)
[6] To the extent PAGA permits aggrieved employees to recover "a civil penalty" applicable to the underlying Labor Code violation, the right to do so may not be assignable on the additional ground that a right to recover statutory penalties may not be assignable. (See footnote 5, ante.)
[7] In denying a petition for hearing in Mitchell, the Supreme Court withheld approval of a portion of the opinion not pertinent to the point for which it is cited in the text. (Mitchell v. Shoreridge Oil Co., supra, 24 Cal.App.2d at p. 385, 75 P.2d 110.)
[8] The same conclusion flows from other authorities, which show that a valid assignment transfers legal title to a claim. "Legal title passes to the assignee when a chose in action is transferred," even though the assignment is made only for collection. (1 Witkin, Summary of Cal. Law, supra, § 732; see APCC Services, Inc. v. Sprint Communications Co. (D.C.Cir.2005) 418 F.3d 1238, 1244["[c]ourts and commentators agree that, if an assignment properly transfers ownership of a claim, then the assignee's interest `is not affected by the parties' additional agreement that the transferee will be obligated to account for the proceeds of a suit brought on the claim'"].) The critical point is that the assignee has legal title to an assigned claim. But there is no such thing as "legal title" to or "ownership of" a statutorily conferred right to bring suit on behalf of others. According, the right to bring a representative suit cannot be subject to assignment.
[9] The right conferred by statute to bring a representative suit may be likened by analogy to a right conferred by a power of attorney. "A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim. [Citation.] The grant of a power of attorney, however, is not the equivalent of an assignment of ownership. . . ." (Advanced Magnetics, Inc. v. Bayfront Partners, Inc. (2d Cir.1997) 106 F.3d 11, 17-18.)
[10] It is worth noting that, with respect to the UCL, permitting the assignment whether expressly or by operation of law of the right to bring a representative suit on behalf of others would effectively circumvent one of the principal objectives of Proposition 64, which was aimed at limiting private enforcement of the unfair competition laws. (See Guide, supra, analysis of Prop. 64 by Legislative Analyst, pp. 38-39.)
[11] Neither party submitted the Voter Information Guide as in exhibit in connection with this writ petition; however, the Unions submitted and rely on the two pages of the Guide containing the text of the proposition. We take judicial notice, on our own motion, of the remainder of the Voter Information Guide. (Evid.Code, § 459 [reviewing court may take judicial notice of any matter specified in Evidence Code section 452]; Evid. Code, § 452, subd. (h) [judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)
[12] The Unions also cite Professional Fire Fighters v. City of Los Angeles (1963) 60 Cal.2d 276, 283-284, 32 Cal.Rptr. 830, 384 P.2d 158 [union had capacity to sue on behalf of its members in action seeking injunction and declaratory relief; "entire action is one such as is contemplated by Code of Civil Procedure section 382"] and Weaver v. Pasadena Tournament of Roses (1948) 32 Cal.2d 833, 836-837, 198 P.2d 514["[t]he propriety of representative or class suits has long been recognized in our statutory law as embraced in section 382"].
[13] No one would suggest that section 382 authorizes anyone to sue on behalf of others in any instance where there is a "question . . . of a common or general interest, of many persons," or whenever it is impracticable to bring numerous parties before the court. (Code Civ. Proc., § 382.) But, read literally, that is all section 382 requires. Instead, of course, numerous (and different) rules of law govern who may bring both representative and class suits. Moreover, the voters themselves would not know what "compliance] with Section 382" meant, without reference to the ballot materials.
[14] The Unions' writ petition also asserts that no class certification is required of a representative action brought under PAGA. Because the trial court did not consider this contention, and the real parties in interest have not responded to it, this court will not address it.
[1] Proposition 64 amended the provision in section 17204 of the UCL which pertains to private litigants to read: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively . . . by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Section 17203 was also amended, and now reads, in part: "Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure. . . ."
[2] Business and Professions Code section 17201 provides: "As used in this chapter, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." (Emphasis added.)
[3] It is hornbook law that a class action is merely a device to aggregate individual claims that could not have been asserted individually; i.e., it is not intended to permit the class representative to assert "claims" that the absent class members do hot have. (See e.g., Feitelberg v. Credit Suisse First Boston, LLC (2005) 134 Cal.App.4th 997, 1018, 36 Cal.Rptr.3d 592; Vernon v. Drexel Burnham & Co. (1975) 52 Cal.App.3d 706, 716, 125 Cal. Rptr. 147.)
[4] Labor Code section 2699, subdivision (a) provides: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."
[5] On the other hand, if at a later date, the California Supreme Court determines that the PAGA claims in this action constitute statutory penalties, the Unions would not be able to pursue the PAGA claims. See, Murphy v. Kenneth Cole Prod., Inc. (2005) 134 Cal. App.4th 728, review granted February 22, 2006, S140308.